IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-00291-WYD-CBS

SARAH HEIN,

    Plaintiff,

v.

AT&T OPERATIONS, INC.;
DAVID OHRN; and
MICHAEL HENRY,

    Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 85), filed April 14, 2010.  Plaintiff's First Amended Complaint asserts the following three claims against the Defendants arising out of her employment with Defendant AT&T Operations, Inc.: (1) retaliation in violation of the Sarbanes-Oxley Act of 2002 ("SOX"); (2) wrongful discharge in violation of public policy; and (3) outrageous conduct.

In the pending motion, Defendants seek summary judgment on Plaintiff's three claims for relief.  First, Defendants argue that Plaintiff cannot sustain her SOX claim because she cannot prove that she is a covered employee under SOX since Defendant At&T Operations, Inc., Plaintiff's former employer, is a corporate subsidiary of AT&T, Inc. and is not itself a publicly traded company.  Defendants further assert that Plaintiff

did not engage in a protected activity under SOX because the alleged violations did not pertain to matters that would be material to stockholders. Defendants also contend that Plaintiff cannot show that she experienced any pre-termination adverse employment actions or that her complaints were a contributing factor in her May 21, 2008 employment termination.

Second, Defendants argue that Plaintiff's wrongful discharge in violation of public policy claim should be dismissed as it violates Colorado law. Third, Defendants argue that Plaintiff's outrageous conduct claim fails as a matter of law because Defendants' conduct does not satisfy the high standard for outrageous conduct under Colorado law.

In response, Plaintiff claims that SOX should be read to include publicly traded corporations and the corporate subsidiaries whose financial information is consolidated in the parent company's financial statement. For the reasons stated below, I find that Defendants' motion for summary judgment should be granted on all claims.

## II.     RELEVANT FACTS

Defendant AT&T Operations, Inc. is a wholly-owned subsidiary of AT&T Inc., which is a corporate holding company that is not a party to this case. AT&T Inc. is a publicly traded company while Defendant AT&T Operations, Inc. is not itself a publicly traded company. Accordingly, AT&T Operations, Inc. does not have any securities registered under section 12 of the Securities Exchange Act of 1934 nor is it required to file reports under section 15(d) of the Securities Exchange Act of 1934.

On April 18, 2007, Defendant AT&T Operations, Inc. ("AT&T") employed Plaintiff as an account executive ("AE") in its Select Accounts Inside Sales Center ("Select

Accounts") in Denver, Colorado. Plaintiff was responsible for "inside" sales of AT&T products and services to business customers. When Plaintiff began working for AT&T, Kris Sokolowski was her direct supervisor. In October 2007, AT&T announced that David Ohrn would assume responsibility for Plaintiff's team.

During Plaintiff's employment, the Select Accounts team used a computer database called Electronic Account Management Tool ("eAMT") to track the status of customer contracts. AEs input data into a spreadsheet regarding each of their sales contracts, which is then loaded into the eAMT system. AEs are responsible for ensuring that their account profile information is complete and current. Based on the assigned expiration date, eAMT assigns a color code to each contract depending on its status.[1] The parties dispute as to whether the eAMT system is solely an internal database of contract information used by AEs to track the status of their contracts and thus prioritize their sales efforts. Plaintiff contends that she believes that the information on the eAMT system was "reported to Wall Street."

On November 2, 2007, Sokolowski sent an email to the AE team, including Plaintiff, instructing them to re-code the contracts that were currently coded as "black" within the eAMT system to "green" and to give those contracts a five-year expiration date. Sokolowski stated that he gave this instruction to his team based on a misunderstanding of a directive from Regional Sales Vice President Michael Henry.

---

[1] The color codes included the following: (1) red - for contracts set to expire in three months or less; (2) yellow - for contracts set to expire in four to nine months; (3) green - for contracts set to expire in more than nine months; and (4) black - for contracts with unknown expiration dates.

Henry's actual instruction was for Sokolowski and the other Sales Managers to individually analyze all of the "black" contracts in the eAMT system to determine if they had been properly coded or if they would be more accurately coded as "green" or "blue." On November 9, 2007, Sokolowski sent a second email to the AEs clarifying that each "black" contract should be assessed to determine whether it would be more properly re-coded as "blue" or "green."

On November 14, 2007, Plaintiff sent letters to a number of AT&T executives reporting her belief that Sokolowski's November 2, 2007 email directive to re-code contracts within the eAMT system violated SOX and AT&T's Code of Conduct. On November 16, 2007, Plaintiff placed an anonymous call to the AT&T Asset Protection hotline and left a message reporting the same alleged SOX violation involving Sokolowski's November 2, 2007 email directive. Also, on November 19, 2007, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA"), in which she alleged that AT&T and Ohrn had violated SOX by retaliating against her for engaging in protected activity. Specifically, Plaintiff complained that a discussion with Ohrn about her performance and attitude on November 9, 2007—five days prior to the date she sent her November 14, 2008 letter—constituted unlawful retaliation.

From January 20, 2008 until April 4, 2008, Plaintiff was absent from work due to illness. On April 4, 2008, Plaintiff returned to work. On April 8, 2008, Plaintiff distributed handbills to other AT&T employees regarding AT&T's overtime practices. Subsequently, Henry informed Plaintiff that she was not permitted to distribute handbills during work time in the work areas of the building and that she would be subject to

-4-

disciplinary action, including dismissal, if she did so again.  On April 9, 2008, due to technological issues, Henry gave Plaintiff a work assignment to complete at home. Plaintiff failed to complete the work assignment.  On April 11, 2008, Plaintiff was assigned a second work assignment that she again failed to complete.

On April 14, 2008, Henry arranged for Plaintiff to be examined by a consulting psychiatrist pursuant to the AT&T Fitness for Duty policy to determine if there was a health reason for Plaintiff's inappropriate behavior and refusal to comply with work directives.  Henry then directed Plaintiff to appear at the office of Dr. Gregory Wilets for a psychiatric fitness for duty examination.  Henry also directed Plaintiff to sign a release form authorizing Dr. Wilets to release his conclusion as to whether Plaintiff was medically fit for duty to AT&T.  On April 21, 2008, Plaintiff appeared at Dr. Wilet's office for the first part of the examination.  The parties dispute whether Plaintiff initially refused to sign the release form.  On April 25, 2008, Plaintiff appeared for the second part of the examination.  On May 5, 2008, Plaintiff signed a version of the release form that had been altered by Plaintiff's attorney.  On May 19, 2008, AT&T terminated Plaintiff's employment.

Following her termination, on May 28, 2008, Plaintiff filed a second SOX complaint with OSHA in which she alleged additional retaliation.  Specifically, Plaintiff alleged, among other things, that AT&T's actions of giving her work assignments, sending her to a fitness for duty examination and eventually deciding to terminate Plaintiff's employment constituted retaliation against her.  On June 17, 2008, Plaintiff filed a third SOX complaint with OSHA in which she alleged further retaliation.  In the

third complaint, Plaintiff alleged that AT&T "shorted" her final paycheck and disputed her claim for unemployment compensation.

### III. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

### IV. ANALYSIS

#### A. Plaintiff's SOX Retaliation Claim

SOX's whistleblower protection provision, 18 U.S.C. § 1514A, reads in relevant part:

> No company [that is publicly traded] with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge,

> demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee–
>
> 1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . .

18 U.S.C. § 1514A(a).

In the pending motion for summary judgment, Defendants argue that Plaintiff is not a protected employee under § 1514A(a) because Defendant AT&T Operations, Inc. is not a public company, nor is AT&T Operations, Inc. an agent of a public company. Defendants further argue that even if Plaintiff could establish that she falls within the scope of SOX, Plaintiff cannot establish that she engaged in any protected activity under § 1514A.

        1.      <u>Whether Plaintiff is a Protected Employee Under SOX</u>

Pursuant to SOX, employees of public companies are protected from disclosing certain securities law violations. Moreover, employees of companies with certain associations to publicly traded companies, including agents of such companies, are protected under the whistleblower provision of § 1514A. In the pending motion, Defendants argue that Defendant AT&T Operations, Inc. is not a public company, making § 1514A inapplicable.

Here, it is undisputed that Defendant AT&T Operations, Inc. is not a publicly traded company. Further, Plaintiff agrees that Defendant AT&T Operations, Inc. does not have any securities registered under section 12 of the Securities Exchange Act of

1934 and is not required to file reports under section 15(d) of the Securities Exchange Act of 1934. In response, however, Plaintiff argues that the Court should extend the protections of SOX to Plaintiff "in order to carry out the purposes of the Sarbanes-Oxley Act." (Resp. at 18.) In support of its argument, Plaintiff relies solely on a Department of Labor administrative law judge ("ALJ") opinion, *Moorefield v. Excelon Services, Inc.*, 2004-SOX-00002 (A.L.J. Jan. 24, 2004). In *Moorefield*, the complainant sued both his employer, which was not a publicly traded company, in addition to the public parent company, alleging a violation of § 1514A. The ALJ denied defendant's motion to dismiss, in part, noting that "[a] publicly traded corporation is, for Sarbanes-Oxley purposes, the sum of its constituent units; and Congress insisted upon accuracy and integrity in financial reporting at all levels of the corporate structure, including the non-publicly traded subsidiaries." *Id.* at 6.

I disagree with Plaintiff's argument for several reasons. First, *Moorefield* is distinguishable from the facts of the instant case.[2] Importantly, here, Plaintiff only sued the non-public subsidiary AT&T Operations, Inc., not the public parent company. In finding that § 1514A applied to the complainant, the ALJ specifically relied on the fact that the complainant asserted SOX claims against both the publicly traded parent company as well as the non-public subsidiary company. *Id.* at 12.

Second, the *Moorefied* decision has not been adopted by any federal court and

---

[2] Furthermore, I may consider such administrative decisions as guidance in SOX cases, but such opinions are not binding on this Court. *See Rao v. Daimler Chrysler Corp.*, No. 06-13723, 2007 WL 1424220 (E.D.Mich. May 14, 2007); *Livingston v. Wyeth, Inc.*, No. 1:03CV00919, 2006 WL 2129794, at *8 (M.D.N.C. July 28, 2006).

has been rejected by numerous ALJs in other Department of Labor administrative decisions. *Malin v. Siemens Med. Solutions Health Servs.*, 638 F. Supp. 2d 492, 501 (D.Md. 2008); see also *Rao v. Daimler Chrysler Corp.*, No. 06-13723, 2007 WL 1424220 (E.D.Mich. May 14, 2007); *Brady v. Calyon Sec. (USA) Inc.*, 406 F. Supp. 2d 307, 318-19 (S.D.N.Y 2005); *Savastano v. WPP Group, PLC*, 2007-SOX-00034 (A.L.J. July 28, 2007); *Bothwell v. American Income Life*, 2005-SOX-0057, slip op. at 6 (A.L.J. Sept. 19, 2005); *Lowe v. Terminex Int'l Co., LP*, 2006-SOX-00089 at 7-8 (A.L.J. Sept. 15, 2006).

Given the dearth of Tenth Circuit authority on the issue of whether SOX applies to any employee of a subsidiary of a parent company, I am persuaded by the reasoning of other courts addressing this identical question. In *Rao*, the district court for the Eastern District of Michigan engaged in a detailed, thorough analysis of whether (and under what circumstances) a non-public subsidiary of a public parent company is subject to the SOX whistleblower protection provisions contained in § 1514A. In holding that a non-public subsidiary is not an agent of its parent company for purposes of § 1514A, the *Rao* Court adopted the reasoning of a line of ALJ opinions applying "the general principle of corporate law that a parent is not automatically liable for the actions of a subsidiary, absent a clear intent from Congress to the contrary." *Rao*, 2007 WL 1424220, at *4. The *Rao* Court reasoned that since Congress expressly included subsidiaries along with parent companies in other provisions of SOX—such as SOX's financial reporting provisions—it could have included subsidiaries within the scope of § 1514A. Thus, *Rao* found that the omission of a specific reference to non-public

subsidiaries in § 1514A indicates that "general corporate law principle[s] would govern and employees of non-public subsidiaries are not covered under § 1514A." *Id.* at *4-5 (stating that "it is not the job of this Court to rewrite clear statutory text").

I find that in light of the corporate law principle that parent companies are not liable for their subsidiaries' actions and the fact that Congress supported this rationale by mentioning subsidiaries of public companies in SOX provisions other than § 1514A, Plaintiff is not a protected employee under § 1514A.  Accordingly, since Defendant AT&T Operations, Inc. is not a publicly traded company and Plaintiff failed to name the parent company as a defendant in this action, Defendants' motion for summary judgment is granted as to Plaintiff's SOX claim.[3]  Plaintiff's SOX retaliation claim is dismissed.[4]

  B. <u>Plaintiff's Claim for Wrongful Discharge in Violation of Public Policy Under Colorado Law</u>

In Colorado, it is presumed that "[a]n employee who is hired for an indefinite period of time is an 'at-will employee' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action."  *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987); *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408 (Colo. App. 1993); *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Colo. 1987) (en

---

[3] I further note that Plaintiff failed to provide any evidence or even mention that Defendant AT&T Operations, Inc. acted as an agent for its public parent company.

[4] In light of my order dismissing Plaintiff's SOX retaliation claim, I need not address whether Plaintiff engaged in a protected activity within the scope of SOX.

banc). However, there is a narrow public policy exception to this rule where an employee is fired for refusing to engage in illegal conduct. *Crawford v. Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997).

An at-will employee establishes a prima facie case of wrongful discharge under the public policy exception if the employee presents evidence as to the following elements:

> that the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job related right or privilege, that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; and that the employee was terminated as the result of refusing to perform the act directed by the employer.

*Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992); *see also Crawford*, 938 P.2d at 553. The Colorado Supreme Court added an additional requirement, "that the employee present evidence showing that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker. *Lorenz*, 823 P.2d at 109.

Here, Plaintiff bases her common law wrongful discharge claim on the same facts that form the basis for her SOX retaliation claim. (Am. Compl. ¶¶ 58-63.) However, SOX provides its own remedy for retaliatory discharge. *See* 18 U.S.C. §

1514A(a)(1). In the motion for summary judgment, Defendants argue that Plaintiff's SOX claim precludes her wrongful discharge claim because when a statute "sets forth both a policy and a remedy for discharge in violation of that policy, no need for the court-fashioned public policy exception exists." (Defs' Mot. Summ. J. at 27.) Based on my review of relevant Colorado law, I agree.

Under Colorado law, even if a public policy exception is appropriate, it is not available when the statute in question provides a remedy for retaliatory discharge. *See* 18 U.S.C. § 1514A(a)(1); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. App. 1988); *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003) (affirming summary judgment on wrongful discharge in violation of public policy claim on the ground that it was barred by the FMLA, even though FMLA retaliation claim also failed as a matter of law). I also note that this Court has applied the relevant Colorado law in dismissing a common law wrongful discharge claim when a plaintiff also alleged a federal Title VII claim. *Caspar v. Lucent Tech., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003). Colorado courts have expressly disallowed a wrongful discharge in violation of public policy claim where the statute provides a wrongful discharge remedy. *Id.* Thus, because SOX provides its own remedy for retaliatory discharge, Plaintiff's wrongful discharge claim is not available and must be dismissed as a matter of law.

    C.    <u>Plaintiff's Claim for Outrageous Conduct Under Colorado Law</u>

To establish a claim for outrageous conduct under Colorado law, a plaintiff must show that: "(1) the defendant engaged in extreme and outrageous conduct; (2) the

defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001). "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *Id.* "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id.* "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Systems, Inc.*, 859 F. Supp. 1349 (D. Colo. 1994).

In *McCarty*, the plaintiff alleged that supervisors sought to drive him out of his employment through a pattern of intimidation and harassment. *McCarty*, 15 P.3d at 1126. That harassment included not only psychological harassment, such as threatening phone calls, but even physical intimidation in the form of two vehicular assaults. The plaintiff also alleged that "he was uniquely vulnerable to severe emotional distress and was singled out for subjection to harassment and intimidation." *Id.* The Colorado Court of Appeals held that the plaintiff had not presented sufficient evidence

from which a jury could find that the conduct of defendants was outrageous.  *See also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (holding that the allegations "that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that Coors fired Floyd to scapegoat him for these crimes" were not outrageous as a matter of law ); *Pascouau v. Martin Marietta Corp.*, 1999 WL 495621 (10th Cir. 1999) (finding no outrageous conduct even though plaintiff alleged that co-workers and supervisors frequently engaged in lewd discussions about sex and their sexual experiences, brought sexually suggestive materials into the office, speculated about the plaintiff's sexual preferences, called her nicknames referring to her breast size, and ridiculed and belittled her); *Mares v. Conagra Poultry Co., Inc.*, 773 F. Supp. 248, 253 (D. Colo. 1991) (finding no outrageous conduct where plaintiff alleged that she was terminated for refusing to sign a consent form for a drug testing policy that would have authorized a physician to disclose all medications she was taking to her employer).

In the case at hand, Plaintiff asserts the same allegations for her outrageous conduct claim that she asserted in connection with her SOX retaliation claim.  (Am. Compl. ¶¶ 69-75.)  "Where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)."  *Visor v. Sprint/United Management Co.*, 965 F.Supp. 31, 33 (D. Colo. 1997).  In other words, the Plaintiff cannot just incorporate by reference the allegations forming the basis for her SOX claim and then claim that such allegations are

outrageous. *Id.* (holding that plaintiffs' allegations for outrageous conduct that merely incorporated by reference the Title VII allegations were insufficient to support an independent claim for outrageous conduct under Colorado law); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 385-86 (10th Cir. 1988) ("discharge from employment, without more, is not outrageous conduct."). Thus, I find Plaintiff failed to state a cognizable claim for outrageous conduct.

Further, even if Plaintiff has stated a cognizable outrageous conduct claim, which I do not believe she did, I find there is no admissible evidence that creates a genuine issue of material fact. Specifically, Plaintiff asserts she was required to take a Fitness for Duty Evaluation and sign an unlimited release form, which would have disclosed her medical records to the Defendants. However, Plaintiff's claims are conclusory allegations not supported by admissible evidence. Based on the admissible evidence before me and viewing it in the light most favorable to the Plaintiff, I do not find that the Defendants' conduct rose to the level of being "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCarty*, 15 P.3d at 1126. Accordingly, summary judgment should be entered in favor of the Defendants on Plaintiff's outrageous conduct claim as a matter of law.

V.  CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 85) is **GRANTED** and Plaintiff's claims against the Defendants are **DISMISSED WITH**

**PREJUDICE**.  It is

FURTHER ORDERED that in light of my rulings in this Order, both the final trial preparation conference set for April 15, 2011 and the jury trial set for May 2, 2011 are **VACATED.**

Dated:  December 16, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge